1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  REYNALDA MOLINA, individually;           No.  1:13-cv-01991-DAD-SAB
    JACQUELINE MENDEZ-MADUEÑA,
12  individually; G.M., a minor; J.M., a minor;
    and N.A.C., a minor, and each of them, by
13  and through their guardian ad litem        AMENDED PRETRIAL ORDER
    VERONICA AYON,
14                                             (Doc. No. 106)
                    Plaintiff,
15
          v.
16
    CITY OF VISALIA, a municipal
17  corporation; ADAM COLLINS; DANIEL
    ROBERTS; DIRK ALFANO, individually,
18  and in their official capacity; and DOES 4
    through 100, inclusive,
19
                    Defendants.
20

21

22          On June 20, 2014, plaintiffs Reynalda Molina and Jacqueline Mendez-Madueña with

23  minors G.M. and N.A.C. through *guardian ad litem* Veronica Ayon filed the currently operative

24  second amended complaint ("SAC") against the City of Visalia, Officer Adam Collins, Officer

25  Daniel Roberts, Officer Dirk Alfano, and DOES four through one hundred.  (Doc. No. 40.)  The

26  action stems from a high speed chase and encounter with police during which shots were fired

27  that resulted in deaths of Ruben Molina and Edwardo Madueño.  The SAC alleges causes of

28  action for:  (1) unreasonable search and seizure and use of excessive force under 42 U.S.C. §

1

1983; (2) substantive due process under 42 U.S.C. § 1983; (3) wrongful death under California Government Code §§ 815.2(a), 820(a) and California Civil Code § 43; (4) negligence survival action; (5) negligence under California Government Code § 815.2(a); and (6) assault and battery under California Government Code § 815.2(a).  (*Id.*)

On June 20, 2016, the court conducted a final pretrial conference.  Peter Bersin, Charles Charlton, and Kyle Tracy appeared telephonically as counsel for plaintiffs; and Leonard Herr appeared as counsel for defendants.  (Doc. No. 101.)  On June 27, 2016, this court issued a pretrial order.  (Doc. No. 105.)  In said order, the court, *inter alia*, granted the parties fourteen days to file objections and granted each party seven days thereafter to respond to the other party's objections.  (*Id.*)  On July 11, 2016, defendants filed objections seeking (1) to add Amanda Hughes as a witness and (2) to correct a clerical mistake in the pretrial order in changing the due date for replies to any objections to motions in limine from August 8, 2016 to August 15, 2016.  (Doc. No. 106.)  Defendants state that Amanda Hughes was identified as a witness in defendants' initial disclosures and her statement was provided to plaintiffs in early discovery, but that defendants inadvertently left her name off the list of witnesses in the pretrial statement.  (*Id.* at 1-2.)  Plaintiffs did not file any objections of their own to the pretrial order or a response to defendants' objections.  After a review of the record herein and good cause appearing, the court finds it appropriate to amend the pretrial order to add Amanda Hughes as a witness and to correct the due date for replies to any objections to motions in limine to August 15, 2016.  The court therefore makes the following findings and orders:

I.   JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343, and 1367.  Jurisdiction is not contested.  Venue is proper pursuant to 28 U.S.C. § 1391(b).  Venue is not contested.

II.   JURY

Both parties have demanded a jury trial for all issues.  The jury will consist of nine jurors.

III.   UNDISPUTED FACTS

1. Reynaldo Molina is the mother of decedent Ruben Molina.

2. Ruben Molina was 22 years old at the time of his death.

2

3.  Jacqueline Mendez-Madueña is the wife of decedent Edwardo Madueña.

4.  G.M., and J.M., are the minor children of decedent Edwardo Madueña.

5.  Edwardo Madueña was 19 years old at the time of his death.

6.  Daniel Roberts fired his weapon 13 times on October 26, 2012.

7.  Adam Collins fired his weapon 13 times on October 26, 2012.

8.  Dirk Alfano fired his weapon seven times on October 26, 2012

9.  Edwardo Madueña was driving a white Hyundai Sonata at the time of the police pursuit on October 26, 2012.

10. Adam Collins was the driver of Visalia Police Department unit # 069 during the police pursuit on October 26, 2012.

11. Dirk Alfano was Adam Collins' partner and was in the right front seat in vehicle 069.

12. Daniel Roberts was the driver of Visalia Police Department unit # 079 during the police pursuit on October 26, 2012.

13. Amanda Hughes was a civilian ride-along and was in the right front seat in Visalia Police Department unit # 079.

14. Daniel Roberts did not discuss a plan of action with Adam Collins or Dirk Alfano during the pursuit or before approaching on foot the overturned Hyundai Sonata on October 26, 2012.

15. Dirk Alfano did not discuss a plan of action with Daniel Roberts or Adam Collins during the pursuit or before approaching on foot the overturned Hyundai Sonata on October 26, 2012.

16. Adam Collins did not discuss a plan of action with Daniel Roberts or Dirk Alfano during the pursuit or before approaching on foot the overturned Hyundai Sonata on October 26, 2012.

17. It is not known which of the three officers fired his weapon before the other officers started to fire their weapons.

18. Each time Adam Collins fired his weapon on October 26, 2012, it was a use of force likely to cause death or serious bodily injury.

3

19. Each time Dirk Alfano fired his weapon on October 26, 2012, it was a use of force likely to cause death or serious bodily injury.

20. Each time Daniel Roberts fired his weapon on October 26, 2012, it was a use of force likely to cause death or serious bodily injury.

21. Edwardo Madueña did not have a high school diploma from an accredited institution.

IV.   DISPUTED FACTUAL ISSUES

1.   Whether Edwardo Madueña while fleeing on foot after exiting the crashed and overturned vehicle, made a quarter turn toward Adam Collins and had his hands at his waist.

2.   Whether the Hyundai Sonata failed to stop behind a limit line for a stop sign which alleged failure was the reason for pulling over the vehicle on October 26, 2012 by Visalia Police Department Officers Adam Collins and Dirk Alfano.

3.   Whether the real reason for pulling over the Hyundai Sonata was something other than as stated by Officers Adam Collins and Dirk Alfano.

4.   Whether there were more than 5 occupants in the Hyundai Sonata on October 26, 2012 at the time it crashed and overturned.

5.   Whether any occupant other than Edwardo Madueña, had anything to do with its failure to stop on October 26, 2012 after being directed to do so by Visalia Police Department Officers Adam Collins and Dirk Alfano.

6.   Whether Robert Ruiz heard any shots which he believed were coming from inside the Hyundai Sonata on October 26, 2012 after it crashed and overturned.

7.   Whether any person in the Hyundai Sonata at the time it rolled over was the owner or possessor of a Colt .45 series 70 handgun containing a magazine with five (5) live rounds.

8.   Whether any person in the Hyundai Sonata at the time it rolled over was the owner or possessor of a CZ 97 9mm Rugar pistol containing a magazine with thirteen (13) live rounds.

4

9.  Whether any person in the Hyundai Sonata at the time it rolled over was the owner or possessor of a magazine containing seventeen (17) live rounds of .308 rifle ammunition.

10. What Officer Collins said, if anything, to any of the passengers of the Hyundai before he started firing his weapon.

11. What Officer Alfano said, if anything, to any of the passengers of the Hyundai before he started firing his weapon.

12. What Officer Roberts said, if anything, to any of the passengers of the Hyundai before he started firing his weapon.

13. Whether Officers Collins, Alfano, or Roberts had any reason to believe the passengers of the Hyundai presented a threat to the lives or safety of the officers or others at the time Officers Collins, Alfano and Roberts began firing their weapons.

14. The location of Adam Collins after exiting his patrol vehicle, each time he fired his weapon at any of the passengers who he shot.

15. The location of Dirk Alfano after exiting his patrol vehicle, each time he fired his weapon at any of the passengers who he shot.

16. The location of Daniel Roberts after exiting his patrol vehicle, each time he fired his weapon at any of the passengers who he shot.

17. Whether Officer Collins, Officer Alfano or Officer Roberts heard gunfire coming from or near the Hyundai prior to the time they began firing their weapons.

18. N.A.C. is the minor child of decedent Edwardo Madueña.

19. Defendant Daniel Roberts shot and killed Ruben Molina on October 26, 2012.

20. Defendant Adam Collins shot and killed Edwardo Madueña on October 26, 2012.

21. Edwardo Madueña was shot once in the back of his head.

22. Defendant Dirk Alfano shot and wounded Nicholas Chavez on October 26, 2012.

23. Nicholas Chavez was shot in the leg and in the abdomen.

24. Ruben Molina was not armed at the time Daniel Roberts shot at him.

25. Edwardo Madueña was not armed at the time Adam Collins shot at him.

5

26. Nicholas Chavez was not armed at the time Dirk Alfano shot at him.

27. Ruben Molina was the right front passenger in Edwardo Madueña's vehicle which was involved in the police pursuit on October 26, 2012.

28. Nicholas Chavez was the left rear passenger in Edwardo Madueña's vehicle which was involved in the police pursuit on October 26, 2012.

29. Shanele Alvarado was the middle rear passenger in Edwardo Madueña's vehicle which was involved in the police pursuit on October 26, 2012.

30. Robert Ruiz was the right rear passenger in Edwardo Madueña's vehicle which was involved in the police pursuit on October 26, 2012.

31. The only occupants in Edwardo Madueña's vehicle were Edwardo Madueña, Rubin Molina, Nicholas Chavez, Shanele Alvarado and Robert Ruiz on October 26, 2012 at the time it crashed, rolled over and ended up upside down.

32. Before the attempted stop of Edwardo Madueña's vehicle by Visalia Police Department Officers Adam Collins and Dirk Alfano on October 26, 2012, everyone in the vehicle had been to Jack in the Box for food.

33. At the time Adam Collins and Dirk Alfano attempted to pull over Edwardo Madueña's vehicle, Edwardo Madueña was driving the four passengers to their homes or to a location near where they lived.

34. The reason given by Adam Collins and Dirk Alfano for attempting to pull over Edwardo Madueña's vehicle was an alleged violation of the Vehicle Code section 22450, failing to stop behind a marked limit line at a stop sign.

35. On October 26, 2012, at the time Adam Collins and Dirk Alfano attempted to pull over Edwardo Madueña's vehicle, they had no knowledge of the identity of the driver or the passengers in Edwardo Madueña's vehicle.

36. October 26, 2012 at the time Adam Collins and Dirk Alfano attempted to pull over Edwardo Madueña's vehicle they had no knowledge of whether the driver or the passengers in Edwardo Madueña's vehicle had any criminal record.

37. Adam Collins, Dirk Alfano and Daniel Roberts engaged in a high risk pursuit of Edwardo Madueña's vehicle on the evening of October 26, 2012.

38. During the high risk pursuit Adam Collins and Dirk Alfano reached speeds of up to 100 mph.

39. During the high risk pursuit Daniel Roberts reached speeds of up to 100 mph.

40. At the time Adam Collins, Dirk Alfano and Daniel Roberts engaged in the high risk pursuit, they had no knowledge of the identity of the driver or the passengers in Edwardo Madueña's vehicle.

41. At the time Adam Collins, Dirk Alfano and Daniel Roberts engaged in the high risk pursuit, they had no knowledge of whether the driver or the passengers in Edwardo Madueña's vehicle had any criminal record.

42. At the time Adam Collins, Dirk Alfano and Daniel Roberts engaged in the high risk pursuit, they had no knowledge whether the driver or the passengers in Edwardo Madueña's vehicle were armed with a weapon.

43. Adam Collins did not call off or terminate the high risk pursuit on October 26, 2012.

44. Dirk Alfano did not call off or terminate the high risk pursuit on October 26, 2012.

45. Daniel Roberts did not call off or terminate the high risk pursuit on October 26, 2012.

46. The watch commander, Brian Winter, did not call off or terminate the high risk pursuit on October 26, 2012.

47. At the time Adam Collins, Dirk Alfano and Daniel Roberts fired their weapons on October 26, 2012, they had no knowledge of the identity of the driver or the passengers in Edwardo Madueña's vehicle.

48. At the time Adam Collins, Dirk Alfano and Daniel Roberts fired their weapons on October 26, 2012, they had no knowledge of whether the driver or the passengers in Edwardo Madueña's vehicle had any criminal record.

49. At the time Adam Collins fired his weapon on October 26, 2012, he had no knowledge whether Edwardo Madueña was armed.

50. At the time Dirk Alfano fired his weapon on October 26, 2012, he had no knowledge whether Edwardo Madueña was armed.

51. At the time Daniel Roberts fired his weapon on October 26, 2012, he had no knowledge whether Edwardo Madueña was armed.

52. At the time Adam Collins fired his weapon on October 26, 2012, he had no knowledge whether Ruben Molina was armed.

53. At the time Dirk Alfano fired his weapon on October 26, 2012, he had no knowledge whether Ruben Molina was armed.

54. At the time Daniel Roberts fired his weapon on October 26, 2012, he had no knowledge whether Ruben Molina was armed.

55. At the time Adam Collins fired his weapon on October 26, 2012, he had no knowledge whether Nicolas Chavez was armed.

56. At the time Dirk Alfano fired his weapon on October 26, 2012, he had no knowledge whether Nicholas Chavez was armed.

57. At the time Daniel Roberts fired his weapon on October 26, 2012, he had no knowledge whether Nicholas Chavez was armed.

58. At the time Adam Collins fired his weapon on October 26, 2012, he had no knowledge weather Shanele Alvarado was armed.

59. At the time Dirk Alfaro fired his weapon on October 26, 2012, he had no knowledge whether Shanele Alvarado was armed.

60. At the time Daniel Roberts fired his weapon on October 26, 2012, he had no knowledge whether Shanele Alvarado was armed.

61. At the time Adam Collins fired his weapon on October 26, 2012, he had no knowledge whether Robert Ruiz was armed.

62. At the time Dirk Alfano fired his weapon on October 26, 2012, he had no knowledge whether Robert Ruiz was armed.

63. At the time Daniel Roberts fired his weapon on October 26, 2012, he had no knowledge whether Robert Ruiz was armed.

64. Ruben Molina was not in possession of a weapon at the time Adam Collins, Daniel Roberts & Dirk Alfano fired their weapons on October 26, 2012.

65. Edwardo Madueña was not in possession of a weapon at the time Adam Collins, Daniel Roberts & Dirk Alfano fired their weapons on October 26, 2012.

66. Nicholas Chavez was not in possession of a weapon at the time Adam Collins, Daniel Roberts & Dirk Alfano fired their weapons on October 26, 2012.

67. Shanele Alvarado was not in possession of a weapon at the time Adam Collins, Daniel Roberts & Dirk Alfano fired their weapons on October 26, 2012.

68. Robert Ruiz was not in possession of a weapon at the time Adam Collins, Daniel Roberts & Dirk Alfano fired their weapons on October 26, 2012.

69. Ruben Molina did not fire any weapon at the police before he was shot on October 26, 2012.

70. Edwardo Madueña did not fire any weapon at the police before he was shot on October 26, 2012.

71. Nicholas Chavez did not fire any weapon at the police before he was shot on October 26, 2012.

72. Shanele Alvarado did not fire any weapon at the police on October 26, 2012.

73. Robert Ruiz did not fire any weapon at the police on October 26, 2012.

74. Ruben Molina was shot in the head, left shoulder, left upper arm, left upper back, left upper lip and left cheek.

75. The Tulare County Sheriff Department Officers were charged with the responsibility of searching the scene where the shooting took place on October 26, 2012 for shell casings.

76. The Tulare County Sheriffs searched for shell casings at the scene where the shooting took place by visually looking for shell casings and using a metal detector.

77. There were no shell casings found inside Edwardo Madueña's vehicle by the Tulare County Sheriffs involved in the search.

9

78. The only shell casings found at the scene where the shooting took place on October 26, 2012 were from the 40 caliber Sig Sauer semi-automatic handguns shot by Adam Collins, Daniel Roberts and Dirk Alfano.

79. The Los Angeles County Coroner's Office Forensic Science Laboratories Division tested gunshot residue samples taken by Tulare County Sheriff's Department Officer Swanson from Ruben Molina's hands for gunshot residue and the analysis revealed no gunshot residue particles were found on samples taken of his right and left hands.

80. The Los Angeles County Coroner's Office Forensic Science Laboratories Division tested gunshot residue samples taken by Tulare County Sheriff's Department Officer Swanson from Edwardo Madueña's hands for gunshot residue and the analysis revealed no gunshot residue particles were found on samples taken of his right and left hands.

81. The Tulare County Sheriff's office collected gunshot residue kits from Nicholas Chavez, Robert Ruiz & Shanele Alvarado, but the kits were never tested.

82. Adam Collins did not use his vehicle's spotlight to either illuminate the interior of Edwardo Madueña's vehicle or to prevent the occupants from observing the officer's approach on foot on October 26, 2012.

83. Dirk Alfano did not use his vehicle's spotlight to either illuminate the interior of Edwardo Madueña's vehicle or to prevent the occupants from observing the officer's approach on foot October 26, 2012.

84. Daniel Roberts did not use his vehicle's spotlight to either illuminate the interior of Edwardo Madueña's vehicle or to prevent the occupants from observing the officer's approach on foot October 26, 2012.

85. Adam Collins did not use available cover before the first shot was fired at the scene of the overturned Hyundai Sonata on October 26, 2012.

86. Daniel Roberts did not use available cover before the first shot was fired at the scene of the overturned Hyundai Sonata on October 26, 2012.

87. Adam Collins did not maintain a position of advantage before the first shot was fired at the scene of the overturned Hyundai Sonata on October 26, 2012.

88. Daniel Roberts did not maintain a position of advantage before the first shot was fired at the scene of the overturned Hyundai Sonata on October 26, 2012.

89. On October 26, 2012, Adam Collins did not wait for back up Visalia Police Officers to arrive at the scene before approaching without cover, the overturned Hyundai Sonata on foot.

90. On October 26, 2012, Daniel Roberts did not wait for back up Visalia Police Officers to arrive at the scene before approaching without cover, the overturned Hyundai Sonata on foot.

91. On October 26, 2012, Dirk Alfano did not wait for back up Visalia Police Officers to arrive at the scene before firing his weapon at Nicholas Chavez.

92. Adam Collins did not issue any commands to the driver or the passengers of Edwardo Madueña's vehicle before firing his weapon on October 26, 2012.

93. Dirk Alfano did not issue any commands to the driver or the passengers of Edwardo Madueña's vehicle before firing his weapon on October 26, 2012.

94. The only verbal warning Daniel Roberts issued was "hands" or I'll release my dog" before firing his weapon on October 26, 2012.

95. Adam Collins did not direct the driver or the occupants not to move until instructed to on October 26, 2012.

96. Daniel Roberts did not direct the driver or the occupants not to move until instructed to on October 26, 2012.

97. Dirk Alfano did not direct the driver or the occupants not to move until instructed to on October 26, 2012.

98. Adam Collins did not direct the driver or the occupants to keep their hands in sight on October 26, 2012.

99. Dirk Alfano did not direct the driver or the occupants to keep their hands in sight on October 26, 2012.

100.  Adam Collins did not order the driver or the occupants to exit the vehicle one at a time on October 26, 2012.

101.  Daniel Roberts did not order the driver or the occupants to exit the vehicle one at a time on October 26, 2012.

102.  Dirk Alfano did not order the driver or the occupants to exit the vehicle one at a time on October 26, 2012.

103.  Adam Collins did not order the driver or the occupants to exit the vehicle slowly on October 26, 2012.

104.  Daniel Roberts did not order the driver or the occupants to exit the vehicle slowly on October 26, 2012.

105.  Dirk Alfano did not order the driver or the occupants to exit the vehicle slowly on October 26, 2012.

106.  Before any weapons were fired, Adam Collins exposed himself to needless danger by approaching the overturned Hyundai Sonata by foot.

107.  Before any weapons were fired, Daniel Roberts exposed himself to needless danger by approaching the overturned Hyundai Sonata by foot.

108.  When Adam Collins fired his weapon in the direction of Edwardo Madueña's vehicle after it had rolled over, that presented an imminent threat of death or serious bodily injury to the driver and passengers of the Hyundai Sonata.

109.  When Dirk Alfano fired his weapon in the direction of Edwardo Madueña's vehicle after it had rolled over, that presented an imminent threat of death or serious bodily injury to the driver and passengers of the Hyundai Sonata.

110.  When Daniel Roberts fired his weapon in the direction of Edwardo Madueña's vehicle after it had rolled over, that presented an imminent threat of death or serious bodily injury to the driver and passengers of the Hyundai Sonata.

111.  After the Hyundai Sonata crashed and overturned, the passengers were not able to see through the front window of the car before exiting.

12

112. After Robert Ruiz crawled out of the overturned Hyundai Sonata, he never did anything of a threatening nature so as to cause Adam Collins to believe it was necessary to use deadly force against Edwardo Madueña.

113. After Robert Ruiz crawled out of the overturned Hyundai Sonata, he never did anything of a threatening nature so as to cause Daniel Roberts to believe it was necessary to use deadly force against Edwardo Madueña.

114. After Robert Ruiz crawled out of the overturned Hyundai Sonata, he never did anything of a threatening nature so as to cause Dirk Alfano to believe it was necessary to use deadly force against Edwardo Madueña.

115. After Nicholas Chavez crawled out of the overturned Hyundai Sonata, he did nothing of a threatening nature so as to cause Adam Collins to believe it was necessary to use deadly force against Edwardo Madueña.

116. After Nicholas Chavez crawled out of the overturned Hyundai Sonata, he did nothing of a threatening nature so as to cause Daniel Roberts to believe it was necessary to use deadly force against Ruben Molina.

117. Gunshot residue analysis revealed many characteristic particles of gunshot residue in the interior passenger-side, rear door of the Hyundai driven by Edwardo Madueña.

118. Gunshot residue analysis revealed many characteristic particles of gunshot residue in the interior passenger-side, rear door of the Hyundai driven by Edwardo Madueña.

119. A Colt .45 series 70 handgun was found underneath Ruben Molina's body.

120. A CZ 97 9 mm Rugar pistol was containing a magazine with thirteen (13) live rounds was found several feet away from the Hyundai Sonata near Edwardo Madueña's body.

121. A magazine containing (17) live rounds of .308 rifle ammunition was found inside the Hyundai Sonata.

122. Edwardo Madueña was an active Norteno gang member on October 26, 2012.

123. Ruben Molina was an active Norteno gang member on October 26, 2012.

124. Robert Ruiz was an active Norteno gang member on October 26, 2012.

125.  Ruben Molina was a convicted felon on October 26, 2012.

126.  Robert Ruiz was a convicted felon on October 26, 2012.

127.  Robert Ruiz had been convicted illegally selling firearms prior to October 26, 2012.

128.  Expert testimony from Greg Stutchman establishes the sound of 2 gunshots before any Defendant police officer fired his weapon.

129.  All of the shots fired by the police officers were from 40 caliber Sig Sauer Model P226 - semi automatic handguns.

130.  Peace Officers Standards and Training referred to as "POST" is the standard for law enforcement training in the State of California.

131.  The Visalia Police Department requires its officers to successfully complete POST training.

## V.   DISPUTED EVIDENTIARY ISSUES

### A.   **Plaintiffs' Disputed Evidentiary Issues**

1. Plaintiffs anticipate objecting to any attempt by the defense to introduce any evidence of gang affiliation of Ruben Molina, Edwardo Madueña, Nicholas Chavez, Robert Ruiz or Shanele Alvarado.  Objections will be based Rules 401 and 403 of the *Federal Rules of Evidence*.

2. Plaintiffs anticipate objecting to the introduction of any evidence that Ruben Molina, Edwardo Madueña, or Nicholas Chavez had body tattoos on or before the October 26, 2012 incident date.  Objections will be based Rules 401 and 403 of the *Federal Rules of Evidence*.

3. Plaintiffs anticipate objecting to any evidence that Ruben Molina, Edwardo Madueña, Nicholas Chavez or Robert Ruiz had a criminal record prior to the incident date of October 26, 2012.  Objections will be based Rules 401, 403 and 404(b)(1) of the *Federal Rules of Evidence*.

4. Plaintiffs anticipate objecting to any evidence that magazines with bullets were found inside the Hyundai Sonata after the shooting incident was over.  Objections will be based Rules 401, 403 and 404(b)(1) of the *Federal Rules of Evidence*.

14

5. Plaintiffs anticipate objecting to the introduction of any evidence that two handguns were found at the scene after the shooting stopped based upon the lack of evidence that these guns were fired on the date of the incident.  Objections will be based on Rules 401 and 403 of the *Federal Rules of Evidence*.

6. Plaintiffs anticipate objecting to any attempt by the defense to introduce any written findings of the District Attorney's office for the City of Visalia with respect to the propriety of the VPD officers Adam Collins, Dirk Alfano or Daniel Roberts shooting in this case. Objections will be based on Rules 401 and 403 of the *Federal Rules of Evidence*.

7. Plaintiffs anticipate objecting to any attempt by the defense to introduce any other findings by the Visalia Police Department or the Tulare County Sheriff's Department, with respect to the propriety of the shootings by VPD Officers Adam Collins, Daniel Roberts or Dirk Alfano.  Objections will be based on Rules 401 and 403 of the *Federal Rules of Evidence*.

8. Plaintiffs anticipate objecting to any evidence that Edwardo Madueña and Ruben Molina had traces of marijuana in their system referenced in their autopsy reports. Objections will be based on Rules 401 and 403 of the *Federal Rules of Evidence*.

***Expert Opinions of Joe Callanan***:

9. Plaintiffs believe that the majority of opinions set forth in his FRCP Rule 26 Report are not admissible.

    The following Summary of Expert Opinions numbered in Mr. Callanan's report beginning at page 31 will be objected to either in whole, or in part:  20.01, 20.02, 30.03, 20.05, 20.07, 20.08, 20.11, 20.12, 20.13, 20.14, 20.15, 20.16, 20.17, 20.18, 20.19, 20.20, 20.21, 20.22, 20.24, 20.25, 20.26, 20.27, 20.28, 20.29 and 20.30. Objections to these opinions will be based on the following grounds to wit:

    A.     Opinions are rendered on an ultimate issue.  *Federal Rules of Evidence* 704.

B.      Opinions are conclusions of fact which the jury should decide and are not based on specialized knowledge that will assist the jury in understanding the case. *Federal Rules of Evidence* 702.

C.      Opinions contain statements of law which the jury will be instructed on. *Federal Rules of Evidence* 403.

Plaintiffs intend to address their objections to the previously referenced opinions in motions in limine.

**Expert Opinion of Gregg Stutchman:**

10.  Mr. Stutchman's Rule 26 Report states that he intends to render an expert opinion that two (2) sounds he hears on the dash cam audio tape from officer Daniel Roberts patrol care are gunshots. Further, he intends to testify that these two gunshots are not from guns fired by either Adam Collins, Daniel Roberts or Dirk Alfano. The implication is that these two gunshots had to come from some passengers in the overturned Hyundai Sonata.

Plaintiffs intend to bring a motion in limine to preclude his testimony based on a *Daubert* challenge.  According to plaintiffs there appears to be no scientific evidence to support the conclusions Mr. Stutchman's reaches that the first two sounds are gunshots.  Moreover, according to plaintiffs, there is no scientific evidence supporting Stutchman's opinion rendered as a "critical listening" expert, trained to listen for gunshot sounds.  A motion in limine will be brought by plaintiffs seeking to preclude from admission into evidence of Stutchman's opinion that the first two sounds heard are gunshots, and secondly, that the alleged gunshots could not have been fired by any police officers involved in the shooting in this case.  The objections will also be based on Rule 702(a) through (d) of *Federal Rules of Evidence*.

**Expert Opinion of Kris Mohandie, Ph.D.:**

11.  Mr. Mohandie is a licensed psychologist who specialized in police officer involved shooting cases. In his Rule 26 Report he states he will render the following opinion:

It is expected, normal, and reasonable that the responding officers, under the totality of

16

circumstances and the highly stressful nature of this particular event, perceived danger and an immediate threat from the suspects.  Indeed the totality of the circumstances the officers were subjected to, were more than sufficient to induce a profound psychophysiological fear response.  The normal and expected reaction would be for the officers to respond as they did, with behaviors designed to reduce the perceived threat.

Plaintiffs object to this opinion on the grounds that it is an opinion on an ultimate issue and should be precluded on the basis of Rules 704 and 702 of the *Federal Rules of Evidence*. Plaintiffs intend to address this objection through a motion in limine.

**Expert Opinion of George Williams:**

12. Mr. Williams is an expert in police shooting cases.  His Rule 26 Report renders opinions that are duplicative of opinions rendered by defense expert, Joe Callanan.  Plaintiffs will object to any and all such duplicative expert opinions.

At page 6 of Mr. Williams' report, paragraphs 3 through page 7, line 24, he sets forth the opinions he intends to offer at trial.

Plaintiffs intend to object to portions of each opinion set forth in the aforementioned section of Mr. Williams' report pursuant to *Federal Rules of Evidence*, Rules 702(a) and 704.

B.    **Defendants' disputed factual issues**

1. Defendants will object to the introduction of evidence regarding the car chase that preceded the deaths of Messrs. Molina and Madueña.  Plaintiffs expressly deny that their suit is based on the chase, but insist that the chase is relevant because it leads to liability.  This will be the subject of objection by defense motion in limine under *Federal Rules of Evidence*, Rules 401, 403, & 405.

**Evidence re: Nicholas Chavez**

2. Defendants will object to the introduction of evidence that Nicholas Chavez was shot, that he sued the City, or that his case settled as immaterial.  Defendants will object by motion in limine under *Federal Rules of Evidence* 401, 403, and 405.

***Expert Opinions Not Timely Served*:**

3.  One of plaintiffs' experts, Tamorah Hunt, served a Rule 26 report two months after it was due.  Defendants will object by motion in limine to expert opinions from expert reports not timely served under *Federal Rules of Civil Procedure* 26 & 37.

***Expert Opinion of Roger Clark*:**

4.  Defendants will object to Roger Clark testifying to matters not stated in his expert opinion.  Defendants will object by motion in limine under *Federal Rules of Evidence* 401, 403, 701–703; *Federal Rules of Civil Procedure* 26 & 37.

***Cumulative, inflammatory photographic evidence***

5.  Defendants will object by motion in limine to plaintiffs' proposed presentation to jurors of photographs of the decedents after they were shot.

VI.   SPECIAL FACTUAL INFORMATION IN ACTIONS FOR WRONGFUL DEATH

Pursuant to Local Rule 281(b)(6)(iv), the following special factual information pertains to this action:

On October 26, 2012, a police shooting took place in the City of Visalia after a vehicle pursuit ended with the pursued vehicle crashing and rolling over.  Edwardo Madueña exited the overturned vehicle and was shot by VPD Officer Adam Collins in the back of the head as he was running away.  He died in transit to the hospital.

Rubin Molina was attempting to crawl out of the overturned vehicle when he was shot and killed by VPD Officer Daniel Roberts.

Nicholas Chavez was shot in the leg and abdomen as he crawled out of the overturned vehicle by VPD Officer Dirk Alfano.  He survived the shooting and his case was settled.

Plaintiff Reynalda Molina is the mother of Ruben Molina.  She is suing for the loss of her son's love, companionship, comfort, care, assistance, attention, society and moral support.  In addition, she is suing for funeral and burial expenses.

Edwardo Madueña was 19 on the date of his death.  His dependents are:

•   Jacqueline Mendez-Madueña, wife, age 22.

18

- N.A.C., minor daughter, age 5. Defendants contend N.A.C.'s paternity is not relevant; her capacity as his heir is the subject of dispute.

- G.M., minor daughter, age 5.

- J.M., minor son, age 3.

GM, JM, and N.A.C., are the children of decedent, Edwardo Madueña.

Jacqueline Mendez-Madueña, is the wife of decedent, Edwardo Madueña.

Reynalda Molina, age 52, is the mother of decedent, Ruben Molina.

Decedent, Edwardo Madueña, was contributing $240.00 per month to his children and wife at the time of his death.

Edwardo Madueña was 19 years old at the time of his death.  He was in good health.  He was not a high school graduate.  His only training was as an agriculture worker.

Ruben Molina was 21 years old at the time of his death.  He was in good health.  He was a high school graduate.  His only training was as an agriculture worker.

VII.   <u>RELIEF SOUGHT</u>

The plaintiffs seek compensatory damages and punitive damages.  Jacqueline Mendez-Madueña, GM, JM and NAC seek economic damages for loss of support and household services; and non-economic damages for loss of Edwardo Madueña's love, companionship, comfort, care, assistance, society and moral support as well as for burial and funeral expenses.

Reynalda Molina seeks non-economic damages for loss of Ruben Molina's love, companionship, comfort, care, assistance, society and moral support as well as economic damages for burial and funeral expenses.

VIII.   <u>RELEVANT UNCONTESTED POINTS OF LAW</u>

Liability under federal law is premised on a violation of 42 USC § 1983, use of unreasonable force deprived decedents of their right to be secure in their persons.

Liability under pendent state law is premised on wrongful death and negligence.  *See California Civil Code* § 1714 (a), the general duty to exercise due care; *Code of Civil Procedure* § 377.60(a), who may bring a wrongful death action; and for City's liability under Government Code § 815.2.

1    Damages under federal law for attorney fees is based on 42 U.S.C. § 1983.

2    Compensatory damages are based on *Code of Civil Procedure* § 377.61.

3    Punitive damages are based on a violation of *California Civil Code* § 3294.

4    IX.    <u>RELEVANT CONTESTED POINTS OF LAW</u>

5    The court summarizes the parties' positions on contested points of law below.  Trial briefs

6    addressing these points more completely shall be filed with this court no later than **14 days prior**

7    **to the date of trial** in accordance with Local Rule 285.

8    Issue No. 1:  Whether the chase that preceded the deaths of Messrs. Madueña and Molina

9    are relevant to liability.

10   **Defendants' argument:**

11   Plaintiffs expressly disavowed the car chase as a basis for liability when opposing

12   summary judgment, but now claim it is a basis for liability.  Defendants contend these facts are

13   immaterial and unhelpful to the trier of fact.  Plaintiffs have expressly denied that the chase is a

14   basis for liability, but now insist that the facts of the chase are relevant to a determination of

15   liability.  Plaintiffs' counsel made an unequivocal representation to this court: the chase has never

16   been the basis for liability in this case.  Now, they say it is not a basis for liability, it is just

17   important to determining whether City is liable.  Plaintiff's contradiction is, at best, fallacy; at

18   worst, opportunistic gamesmanship.

19   Plaintiffs are attempting an end run around the rule in *Sacramento v. Lewis*, 523 U.S. 833,

20   843-844 (1998), which unequivocally says that a car chase without more is not a constitutional

21   violation.  Plaintiffs seized the opportunity to try and embarrass the City by claiming they have

22   never based liability on the car chase: now, it is a key fact in establishing City's liability.

23   Plaintiffs should be held good to their own word: the car chase is immaterial to whether these

24   officers violated the rights of the decedents by firing their weapons after the chase was finished.

25   **Plaintiff's response:**

26   The Visalia Police Department has a written Vehicle Pursuit Policy Section 314.1 titled

27   "Purpose and Scope" which provides as follows, to wit:

28   "Vehicle pursuits expose innocent citizens, law enforcement

20

officers and fleeing violators to the risk of serious injury or death. The primary purpose of this policy is to provide officers with guidance in balancing the safety of the public and themselves against law enforcement's duty to apprehend violators of the law. Another purpose of this policy is to reduce the potential for pursuit-related collisions. Vehicular pursuits require officers to exhibit a high degree of common sense and sound judgment. Officers must not forget that the immediate apprehension of a suspect is generally not more important than the safety of the public and pursuing officers

Deciding whether to pursue a motor vehicle is a critical decision that must be made quickly and under difficult and unpredictable circumstances.  In recognizing the potential risk to public safety created by vehicular pursuits, no officer or supervisor shall be criticized or disciplined for deciding not to engage in a vehicular pursuit because of the risk involved.  This includes circumstances where department policy would permit the initiation or continuation of the pursuit.  It is recognized that vehicular pursuits are not always predictable and decisions made pursuant to this policy will be evaluated according to the totality of the circumstances reasonably available at the time of the pursuit.

Officers must remember that the most important factors to the successful conclusion of a pursuit are proper self-discipline and sound professional judgment.  Officer's conduct during the course of a pursuit must be objectively reasonable; that is, what a reasonable officer would do under the circumstances.   An unreasonable individual's desire to apprehend a fleeing suspect at all costs has no place in professional law enforcement."

Other relevant sections include the following:

314.7.5        CAPTURE OF SUSPECTS

"Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects.  Officers shall use only that amount of force, which reasonable appears necessary under the circumstances, to properly perform their lawful duties.

Unless relieved by a supervisor, the primary officer shall coordinate efforts to apprehend the suspects following the pursuit.  Officers should consider safety of the public and the involved officers when formulating plans to contain and capture the suspects."

314.8.1        REGULAR    AND    PERIODIC    PURSUIT TRAINING

"In addition to initial and supplementary Police Officer Standard Training (POST) training on pursuits required by Penal Code § 13519.8, all sworn members of this department will participate no less than annually in regular and periodic department training addressing this policy and the importance of vehicle safety and

protecting the public at all times, including a recognition of the need to balance the known offense and the need for immediate capture against the risks to officers and others (Vehicle Code § 17004.7(d)).

Plaintiffs contend that numerous violations of the VPD Pursuit Policy took place all of which, directly let to the unreasonable use of deadly force by defendant officers Adam Collins, Dirk Alfano, and Daniel Roberts.

X.    ABANDONED ISSUES

The fifth and sixth causes of action are abandoned [by settlement with the plaintiff to them, Nicholas Chavez].

XI.    WITNESSES

Plaintiffs' witnesses shall be those listed in Attachment A.  Defendants' witnesses shall be those listed in Attachment B.  Each party may call any witnesses designated by the other.

A.    The court will not permit any other witness to testify unless:

(1)    The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

(2)    The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

B.    Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

(1)    The witness could not reasonably have been discovered prior to the discovery cutoff;

(2)    The court and opposing parties were promptly notified upon discovery of the witness;

(3)    If time permitted, the party proffered the witness for deposition; and

(4)    If time did not permit, a reasonable summary of the witness's testimony

22

1    was provided to opposing parties.

2    XII.    EXHIBITS, SCHEDULES, AND SUMMARIES

3         Joint exhibits are listed in Attachment C.  At trial, joint exhibits shall be identified as JX

4    and listed numerically, e.g., JX-1, JX-2.  Plaintiffs' exhibits are listed in Attachment D.  At trial,

5    plaintiffs' exhibits shall be listed numerically.  Defendants' exhibits are listed in Attachment E.

6    At trial, defendant's exhibits shall be listed alphabetically.  All exhibits must be pre-marked.

7         The parties must prepare exhibit binders for use by the court at trial, with a side tab

8    identifying each exhibit in accordance with the specifications above.  Each binder shall have an

9    identification label on the front and spine.

10        The parties must exchange exhibits no later than **28 days before trial**.  Any objections to

11   exhibits are due no later than **14 days before trial**.  In making any objection, the party is to set

12   forth the grounds for the objection.  As to each exhibit which is not objected to, it shall be marked

13   and received into evidence and will require no further foundation.

14        A.    The court will not admit exhibits other than those identified on the exhibit lists

15              referenced above unless:

16              (1)    The party proffering the exhibit demonstrates that the exhibit is for the

17                     purpose of rebutting evidence that could not have been reasonably

18                     anticipated, or

19              (2)    The exhibit was discovered after the issuance of this order and the

20                     proffering party makes the showing required in paragraph B, below.

21        B.    Upon the discovery of exhibits after the discovery cutoff, a party shall promptly

22              inform the court and opposing parties of the existence of such exhibits so that the

23              court may consider their admissibility at trial.  The exhibits will not be received

24              unless the proffering party demonstrates:

25              (1)    The exhibits could not reasonably have been discovered earlier;

26              (2)    The court and the opposing parties were promptly informed of their

27                     existence;

28              (3)    The proffering party forwarded a copy of the exhibits (if physically

                                        23

possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

## XIII.   DISCOVERY DOCUMENTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial**.

Plaintiffs/defendants may use the discovery documents listed in Attachment F at trial.

## XIV.   FURTHER DISCOVERY

The parties report that they have agreed that the deposition of Gregg Stutchman may be completed on or before the end of June 2016.  The court takes no position with respect to the parties' agreement in this regard.

## XV.   MOTIONS IN LIMINE

The parties have not yet filed motions in limine.  The court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.  Any motions in limine counsel elects to file shall be filed **on or before July 25, 2016**.  Opposition shall be filed **on or before August 8, 2016** and any replies shall be filed **on or before August 15, 2016**.  The court will hear argument on the motions in limine **on September 6, 2016 at 1:30 p.m.** in courtroom five (DAD) before District Judge Dale A. Drozd.

## XVI.   STIPULATIONS

None.

## XVII.   AMENDMENTS/DISMISSALS

Plaintiffs' fifth and sixth causes of action of the Second Amended Complaint should be dismissed.

## XVIII. SETTLEMENT

The parties previously unsuccessfully participated in a mediation with Hon, Oliver Wanger, Judge (Ret.).  A mandatory settlement conference is set on October 3, 2016 at 10:30 a.m. in courtroom ten (EPG) before Magistrate Judge Erica P. Grosjean.

1   XIX.   AGREED STATEMENTS

2       The parties do not believe an agreed statement is feasible.

3   XX.    SEPARATE TRIAL OF ISSUES

4       A separate trial on punitive damages is feasible.

5   XXI.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

6       Plaintiffs believe there should be a limitation of experts and the defense should decide

7   between George Williams and Joe Callanan who to use with respect to opinions common to both.

8       Defendants ask that this court limit plaintiff's experts to opinions expressed in those

9   reports that were timely served only, and that Mr. Clark be specifically limited to the opinions

10  stated in his report dated February 17, 2016.

11  XXII.  ATTORNEYS' FEES

12      Plaintiffs will be seeking an award of attorneys' fees if they prevail on their 42 U.S.C.

13  1983 claim by way of a post-trial motion.

14      Defendants seek a defense verdict, and costs of suit and attorney's fees pursuant to 42

15  U.S.C. § 1988, should they prevail in this action.

16  XXIII. ESTIMATED TIME OF TRIAL/TRIAL DATE

17      Jury trial is set for **November 1, 2016** at 1:00 p.m. in courtroom five (DAD) before the

18  Honorable Dale A. Drozd.  Trial is anticipated to last no more than three weeks (15 court days).

19  The parties are directed to Judge Drozd's standard procedures available on his webpage on the

20  court's website.

21      Counsel are to call Renee Gaumnitz, courtroom deputy, at (559) 499-5652, one week prior

22  to trial to ascertain the status of the trial date.

23  XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

24      At the pretrial conference, the court and counsel discussed the possibility of using a juror

25  questionnaire to pre-screen prospective jurors.  If they wish to pursue this possibility the parties

26  are directed to submit a proposed jury questionnaire or questionnaires as soon as possible, but in

27  no event later than August 30, 2016, nine weeks prior to the scheduled trial date.

28      The parties shall file any proposed jury *voir dire* **14 days before trial**.  Counsel will be

25

permitted to conduct supplemental jury *voir dire,* the length of which will be determined by the court after it is determined whether a jury questionnaire will be employed.

The court directs counsel to meet and confer in an attempt to generate a joint set of jury instructions and verdicts.  The parties shall file any such joint set of instructions **14 days before trial**, identified as "Joint Jury Instructions and Verdicts."  To the extent the parties are unable to agree on all or some instructions and verdicts, their respective proposed instructions are due **14 days before trial**.

Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before trial**; all blanks in form instructions should be completed and all brackets removed.

Objections to proposed jury instructions must be filed **7 days before trial**; each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority.  When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXV.  <u>TRIAL BRIEFS</u>

As noted above, trial briefs are due **14 days before trial**.

XXVI. <u>OBJECTIONS TO PRETRIAL ORDER</u>

Each party is granted **14 days from the date of this order** to file objections to the same.  Each party is also granted **7 days thereafter** to respond to the other party's objections.  If no objections are filed, the order will become final without further order of this court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

**Attachment A**

1. Reynalda Molina, 773 E. Bent Ranch Avenue, Earlimart, CA 93219.

2. Socoro Ramirez, 773 E. Bent Ranch Avenue, Earlimart, CA 93219.

3. Nicholas Chavez, 1510 14th Avenue, Delano, CA.

4. Robert Ruiz, 148 North Santa Clara, Tulare, CA.

5. Shanele Alvarado, 200 West Caldwell Avenue, Apt. 29, Visalia, CA.

6. Jacqueline Mendez-Madueña, 867 State Street, Earlimart, CA 93219.

7. G.M., a minor, by and through their Guardian Ad Litem VERONICA AYON, 414 Via de Moreno, Delano, CA 93215.

8. J. M., a minor, by and through their Guardian Ad Litem VERONICA AYON, 414 Via de Moreno, Delano, CA 93215.

9. N.A.C., a minor, by and through their Guardian Ad Litem VERONICA AYON, 414 Via de Moreno, Delano, CA 93215.

10. Adam Collins, Visalia Police Department ("VPD").

11. Dirk Alfano, Visalia Police Department ("VPD").

12. Daniel Roberts, Visalia Police Department ("VPD").

13. Merced Zamora - Tulare County Sheriff's Department ("TCSO")

14. Rodney Klassen - TCSO.

15. Gary Walter. M.D., Microcorre Diagnostic Laboratory, 890 Cherry Street, Tulare, CA 93274.

16. Detective Whaley, VPD.

17. Detective B. Saldana - TCSO.

18. Nancy D. McCombs, Sr. Criminalist, California Department of Justice Bureau of Forensic Services, 5311 N. Woodrow Avenue, Fresno, CA 93740, (559) 294-4000.

19. Brian Winter, VPD.

20. Jason DeWitt, VPD.

21. C. Swanson, TCSO.

22. Thomas Wright, Deputy Coroner, 1225 S. "O" Street, Tulare, CA 93274.

23. Jose Torres, TCSO.

24. Detective William Meeks, TCSO.

25. M. Webb, TCSO.

26. Debra K. Kowal, Sr. Criminalist, Los Angeles County Coroner's Office, 1104 N. Mission Road, Los Angeles, CA 90033.

27. Deputy Ricardo Cerda - VPD.

28. Jesus Madueña, 2336 Corte Sanchez, Delano, CA 93215.

29. Deputy Ricardo Cerda – TCSO

30. Capt. Perry Phipps, VPD

31. Capt. Rick Haskill, VPD

32. Lt. Steve Puder, VPD

33. Lt. Steve Phillips, VPD

34. Sgt. Russ Gauger, VPD

35. Sgt. Amy Watkins, VPD

36. Agt. Lance Brooks, VPD

37. Marisela Cisneros[1]

---

[1] Although not listed in plaintiff's list of witnesses in the pretrial statement, the parties stipulated to the inclusion of witness Marisela Cisneros, who has previously been deposed in this action, at the pretrial conference.

**Attachment B**

1.  Reynalda Molina, 773 E. Bent Ranch Avenue, Earlimart, CA 93219.

2.  Socoro Ramirez, 773 E. Bent Ranch Avenue, Earlimart, CA 93219.

3.  Nicholas Chavez, 1510 14th Avenue, Delano, CA.

4.  Robert Ruiz, 148 North Santa Clara, Tulare, CA.

5.  Shanele Alvarado, 200 West Caldwell Avenue, Apt. 29, Visalia, CA.

6.  Jacqueline Mendez-Madueña, 867 State Street, Earlimart, CA 93219.

7.  G.M., a minor, by and through her Guardian Ad Litem VERONICA AYON, 414 Via de Moreno, Delano, CA 93215.

8.  J. M., a minor, by and through her Guardian Ad Litem VERONICA AYON, 414 Via de Moreno, Delano, CA 93215.

9.  N.A.C., a minor, by and through her Guardian Ad Litem VERONICA AYON, 414 Via de Moreno, Delano, CA 93215.

10. Officer Adam Collins, Visalia Police Department (VPD)

11. Officer Dirk Alfano, VPD

12. Officer Daniel Roberts, VPD

13. Merced Zamora - Tulare County Sheriff's Department ("TCSO")

14. Rodney Klassen – TCSO

15. Gary Walter. M.D., Microcorre Diagnostic Laboratory, 890 Cherry Street, Tulare, CA 93274.

16. Detective Whaley, VPD.

17. Detective B. Saldana, TCSO.

18. Nancy D. McCombs, Sr. Criminalist, California Department of Justice Bureau of Forensic Services, 5311 N. Woodrow Avenue, Fresno, CA 93740, (559) 294-4000.

19. Officer Brian Winter, VPD

20. Officer Jason DeWitt, VPD

21. C. Swanson, TCSO.

22. Thomas Wright, Deputy Coroner, 1225 S. "O" Street, Tulare, CA 93274.

23. Jose Torres, TCSO.

24. Detective William Meeks, TCSO

25. M. Webb, TCSO.

26. Debra K. Kowal, Sr. Criminalist, Los Angeles County Coroner's Office, 1104 N. Mission Road, Los Angeles, CA 90033

27. Deputy Ricardo Cerda – TCSO

28. Capt. Perry Phipps, VPD

29. Capt. Rick Haskill, VPD

30. Lt. Steve Puder, VPD

31. Lt. Steve Phillips, VPD

32. Sgt. Russ Gauger, VPD

33. Sgt. Amy Watkins, VPD

34. Agt. Lance Brooks, VPD

35. Amanda Hughes[2]

---

[2] Although not listed in defendant's list of witnesses in the pretrial statement, the court has added her to defendants' witness list after defendants' timely and unopposed objection to the pretrial order seeking to add her as a witness.  (*See* Doc. No. 106.)

## **Attachment C**

None submitted.

**Attachment D**

1. Death Certificate of Ruben Molina.

2. Birth Certificate of Ruben Molina.

3. High School Diploma of Ruben Molina.

4. High School Football Championship plaque - Ruben Molina.

5. Student I.D. Card from Allan Hancock College - Ruben Molina.

6. Graduation photographs of Ruben Molina.

7. Childhood photographs of Ruben Molina.

8. Miscellaneous family photographs.

9. Autopsy report - Ruben Molina.

10. College Journal entry - Ruben Molina.

11. Burial expense documents - Ruben Molina.

12. The following photographs and drawings produced by the defense in discovery in CD format:

    a. Photograph numbers – 12, 13, 15, 20, 22, 23, 24, 25, 27, 29, 30, 32, 26, 67, 68, 74, 77, 82, 98, 103, 105, 119, 121, 123, 124, 126, 145, 148, 151, 152, 154, 157, 178, 180, 316, 505, 546.

    b. Police Officer Drawings numbers - 197, 199, 201, 203, 205, 207

    c. Hyundai Sonata Photos numbers - 566, 569, 582, 584, 586, 600, 604.

13. Deposition Exhibits 1 through 23 from Adam Collins, Daniel Roberts and Dirk Alfano's deposition transcripts.

14. Deposition Exhibit 2 from Jason DeWitt's deposition transcript.

15. Deposition Exhibits 3 and 4 from Brian Winter's deposition transcript.

16. Deposition Exhibits 1 through 6 from Russell Gauger's deposition transcript.

17. Deposition Exhibits 6 and 9 from Shanele Alvarado's deposition transcript.

18. Deposition Exhibit 3, 5, 9, 10 & 11 from Robert Ruiz's deposition transcripts.

19. Deposition Exhibit 5 from Nicholas Chavez's deposition transcript.

/////

32

20. The Gunshot Residue test results done by Debra Gibson on Edwardo Madueña, Ruben Molina and the Hyundai Sonata; Exhibits 1 through 3 of her deposition transcript.

21. The Physical Evidence Report done by Nancy D. McCombs; Exhibits 1 and 2 to her deposition transcript.

22. VPD Policy #300, Section 300.1, 300.1.1, 300.2, 300.3, 300.3.2 and 300.4.

23. VPD Policy on Vehicle Pursuits, Sections 214.1, 314.11, 314.2.1, 314.2.2, 314.3.3, 314.4, 314.4.1, 314.7.5 and 314.8.1

24. VPD Police Service Dog Program, Sections 318.2 and 318.2.1.

25. Allied Agency Vehicle Pursuit Report; defense bate number COV02683.

26. VPD Video Cam footage from Daniel Robert's Canine Unit Vehicle.

27. VPD Video Cam footage from Adam Collin's Gang Suppression Unit Vehicle.

28. TCSO interviews of Adam Collins, Daniel Roberts and Dirk Alfano produced in discovery by the defense, both audio and transcripts.

29. Deposition transcript of Robert Ruiz.

30. Deposition transcript of Shanele Alvarado

31. Deposition transcript of Daniel Roberts

32. Deposition transcript of Dirk Alfano

33. Deposition transcript of Adam Collins

34. Deposition transcript of Veronica Ayon

35. Visalia Police Department Radio Traffic

36. Visalia Police Department cell phone records

37. Jack in the Box video

38. Hand written jail letters from Ruben Molina to his mother, Reynalda Molina

39. Tulare County Sheriff Reports, Batestamp COV 00647-00842

40. Tulare County Sheriff Reports, Batestamp COV 00574-00636

41. Tulare County Sheriff's Reports Batestamp COV 00269-00448

42. Deposition transcript of the Debra K. Gibson

43. Deposition transcript of Nancy D. McCombs

33

44. Deposition Transcript of Araceli Cisneros/Solano

45. All exhibits to the deposition of Araceli Cisneros/Solano

46. Deposition transcript of Lt. Brian Winter

47. Deposition transcript of Sgt. Russel Gauger

48. Deposition transcript of Officer Jason DeWitt

49. Deposition transcript of Rodney Klassen

50. All exhibits to the deposition of Rodney Klassen

51. Deposition transcript of Jose Torres

52. The following photographs: 2908934, 2908928, 2908865, 2908874, 2908892, 2908898, 2908907, 2908910, 2909153, 2909204, 2909219, 2909363, 2909369, 2909375, 2913335, 2913341, 2913350, 2913362, 2913374, 2913878, 2931415, 2931418, 2931550, 2931568

53. Certificate of Live Birth of N.A.C.

54. Certificate of Live Birth of J.M.

55. Certificate of Live Birth of G.M.

56. Marriage Certificate of Edwardo Madueña and Jacqueline Mendez-Madueña.

57. Certificate of Death of Edwardo Madueña.

58. Autopsy report – Edwardo Madueña.

59. Various Photographs of Edwardo Madueña, Edwardo Madueña's grave site, Jacqueline Mendez-Madueña, G.M., J.M. and N.A.C.

60. Relationship Report.

61. Check Stubs (JA Contracting Labor Management) – Edwardo Madueña.

62. Check Stubs (Alvaro Mercado Peregrina) – Edwardo Madueña.

63. Check Stubs (Santa Rios Farm Labor) – Edwardo Madueña.

64. W-2 (Copy C/2) Income Tax Form Date: 2011 Employer:  Benito Martinez (Edwardo Madueña).

65. W-2 (Copy C) Income Tax Form Date: 2011 Employer: Santana Rios Farm Labor (Edwardo Madueña).

66. W-2 (Copy C/2) Income Tax Form Date:  2011 Employer:  Torres Produce (Edwardo Madueña).

67. Edwardo Madueña's Form 1040 U.S. Individual Income Tax Return.

68. Statement of Funeral Goods and Services Selected/Purchase Agreement – Edwardo Madueña.

69. Charter of the City of Visalia – Edwardo Madueña.

70. Belford High School Diploma – Edwardo Madueña.

71. Certificate of Distinction in Calculus 1 – Edwardo Madueña.

72. Award of Excellence from Belford High School – Edwardo Madueña.

73. Certificate of Membership in Student Council – Edwardo Madueña.

74. Belford High School Transcript – Edwardo Madueña.

75. Certificate of Edwardo Madueña's aware of a High School Diploma with a 3.19 Grade Point Average.

76. Deposition transcript of Tamorah Gail Hunt, Ph.D. and Exhibits (Excluding Exhibit 32).

**Attachment E**

1. Visalia Police Department Investigative Report Nos. 12-15653 – H12-15653

2. Tulare County Sheriff's Department Investigative Report Nos. 12-00014072-000 through 12-00014072-030

3. Department of Justice Physical Evidence Examination Report

4. Tulare County Sheriff audio interview with Nicholas Chavez

5. Transcript of audio interview with Nicholas Chavez

6. Tulare County Sheriff audio interviews with Robert Ruiz

7. Transcripts of Tulare County Sheriff audio interviews with Robert Ruiz

8. Deposition transcript of Robert Ruiz.

9. Tulare County Sheriff audio interview with Shanele Alvarado

10. Transcript of Tulare County Sheriff audio interview with Shanele Alvarado

11. Deposition transcript of Shanele Alvarado

12. Tulare County Sheriff audio interview with Officer Daniel Roberts

13. Transcript of Tulare County Sheriff audio interview with Officer Daniel Roberts

14. Deposition transcript of Daniel Roberts

15. Tulare County Sheriffs audio interview with Officer Dirk Alfano

16. Transcript of Tulare County Sheriff audio interview with Dirk Alfano

17. Deposition transcript of Dirk Alfano

18. Tulare County Sheriffs audio interview with Officer Adam Collins

19. Transcript of Tulare County Sheriff audio interview with Officer Adam Collins

20. Deposition transcript of Adam Collins

21. Audio graphs from expert Greg Stutchman.

22. Enhanced audio of sound from video dash cams by Greg Stutchman.

23. Audio recording of interview with Veronica Ayon

24. Transcript of interview with Veronica Ayon

25. Deposition transcript of Veronica Ayon

26. Visalia Police Department Radio Traffic

36

27. Visalia Police Department cell phone records

28. Jack in the Box video

29. Dash Cam video from Officer Daniel Roberts' patrol vehicle

30. Dash Cam video from Officer Adam Collins' patrol vehicle

31. Hand written jail letters from Ruben Molina to his mother, Reynalda Molina

32. All exhibits to the deposition of Robert Ruiz

33. All exhibits to the deposition of Nicholas Chavez

34. Gang opinion regarding Nicholas Chavez, Batestamp COV 00637-00647

35. Gang opinion regarding Robert Ruiz, Batestamp COV 00637-00647

36. Tulare County Sheriff Reports, Batestamp COV 00647-00842

37. Tulare County Sheriff Reports, Batestamp COV 00574-00636

38. Tulare County Sheriff's Reports Batestamp COV 00269-00448

39. Tulare County Sheriff's Reports Batestamp COV 00449-00573

40. Search Warrant and Affidavit; Statement of Probable Cause

41. Forensic Science Laboratories Analytical Report by Debra K. Kowal

42. Deposition transcript of the Debra K. Gibson

43. All exhibits to the deposition of Debra K. Gibson

44. Physical Evidence Examination Report by Nancy D. McCombs

45. Deposition transcript of Nancy D. McCombs

46. All exhibits to the deposition of Nancy D. McCombs

47. Deposition Transcript of Araceli Cisneros/Solano

48. All exhibits to the deposition of Araceli Cisneros/Solano

49. Deposition transcript of Lt. Brian Winter

50. All exhibits to the deposition of Lt. Brian Winter

51. Deposition transcript of Sgt. Russel Gauger

52. All exhibits to the deposition of Sgt. Russel Gauger

53. Deposition transcript of Officer Jason DeWitt

54. All exhibits to the deposition of Officer Jason DeWitt

55. Deposition transcript of Rodney Klassen

56. All exhibits to the deposition of Rodney Klassen

57. Deposition transcript of Jose Torres

58. All exhibits to the deposition of Jose Torres

59. Deposition transcript of Lt. Ed Lynn

60. All exhibits to the deposition of Lt. Ed Lynn

61. Deposition transcript of Mark Coleman

62. All exhibits to the deposition of Mark Coleman

62. VPD Policy #300, Section 300.1, 300.1.1, 300.2, 300.3, 300.3.2 and 300.4.

63. VPD Policy on Vehicle Pursuits, Sections 214.1, 314.11, 314.2.1, 314.2.2, 314.3.3, 314.4, 314.4.1, 314.7.5 and 314.8.1

64. VPD Police Service Dog Program, Sections 318.2 and 318.2.1.

65. Allied Agency Vehicle Pursuit Report; defense bate number COV02683.

66. The following photographs: 2908934, 2908928, 2908865, 2908874, 2908892, 2908898, 2908907, 2908910, 2909153, 2909204, 2909219, 2909363, 2909369, 2909375, 2913335, 2913341, 2913350, 2913362, 2913374, 2913878, 2931415, 2931418, 2931550, 2931568

67. Tulare County District Attorney letter to Tulare County Sheriff's Department

68. Findings and Conclusions of Deadly Force Review Board

69. Memo to Officer Dirk Alfano re Findings of Deadly Force Review Board

70. Memo to Officer Daniel Roberts re Findings of Deadly Force Review Board

71. Memo to Officer Adam Collins re Findings of Deadly Force Review Board

**Attachment F**

**Plaintiffs' Discovery Documents:**

36. Defendant City of Visalia's Responses to Plaintiff, J.M.'s First Set of Special Interrogatories

- Special Interrogatory No. 1 and Response thereto as it pertains to Request for Admission 4.
- Special Interrogatory No. 1 and Response thereto as it pertains to Request for Admission 5.
- Special Interrogatory No. 2 and Response thereto No. 2.

37. Defendant City of Visalia's Responses to Plaintiff J.M.'s First Set of Request for Admissions

- Request for Admission No. 2 and Response Thereto.
- Request for Admission No. 3 and Response Thereto.
- Request for Admission No. 4 and Response Thereto.
- Request for Admission No. 5 and Response Thereto.
- Request for Admission No. 6 and Response Thereto.
- Request for Admission No. 7 and Response Thereto.
- Request for Admission No. 10 and Response Thereto.
- Request for Admission No. 11 and Response Thereto.
- Request for Admission No. 12 and Response Thereto.
- Request for Admission No. 13 and Response Thereto.
- Request for Admission No. 14 and Response Thereto.

38. Defendant City of Visalia's Responses to Plaintiff J.M.'s First Set of Request for Production

- Request for Production No. 1 and Response Thereto.

39. Defendant City of Visalia's Response to Plaintiff J.M.'s Second Set of Special Interrogatories

- Special Interrogatory No. 5 and Response thereto as it pertains to Request for Admission 17.
- Special Interrogatory No. 5 and Response thereto as it pertains to Request for Admission 18.
- Special Interrogatory No. 5 and Response thereto as it pertains to Request for Admission 20.
- Special Interrogatory No. 5 and Response thereto as it pertains to Request for Admission 25.
- Special Interrogatory No. 5 and Response thereto as it pertains to Request for Admission 26.
- Special Interrogatory No. 5 and Response thereto as it pertains to Request for Admission 27.
- Special Interrogatory No. 5 and Response thereto as it pertains to Request for Admission 28.
- Special Interrogatory No. 8 and Response thereto.

**Defendants' Discovery Documents:**

**G.M. Responses to City's Discovery**

1. G.M. Responses to Defendant COV's First Set of Special Interrogatories. (Dated 1/14/2015)

2. G.M. Responses to Defendant COV's First Set of Request for Admission. (Dated 1/14/2015)

3. G.M. Responses to Defendant COV's First Set of Request for Production of Documents. (Dated 1/14/2015)

4. G.M. Supplemental Responses to Defendant COV's First Set of Special Interrogatories. (Dated 8/6/2015)

5. G.M. Supplemental Responses to Defendant COV's First Set of Request for Production of Documents. (Dated 8/6/2015)

/////

6. G.M. Responses to Defendant COV's Second Set of Request for Production of Documents. (Dated 11/2/2015)

7. G.M. Responses to Defendant COV's Second Set of Request for Production of Documents. (Dated 11/10/2015)

8. G.M. Responses to Defendant COV's Second Set of Request for Admission. (Dated 12/16/2015)

9. G.M. Responses to Defendant Dirk Alfano's Request for Admission Set One. (Dated 2/11/2016)

10. G.M. Responses to Defendant Dirk Alfano's Interrogatories Set One. (Dated 2/11/2016)

11. G.M. Responses to Defendant COV's Request for Admission Set three. (Dated2/11/2016)

12. G.M. Further Amended Response to Defendant COV's Requests for Admission Set Two. (Dated 2/25/2016)

13. G.M. Further Response to Defendant COV's Interrogatories Set One. (Dated 2/26/2016)

14. G.M. Responses to Defendant Dirk Alfano's Request for Admission Set Two. (Dated 3/4/2016)

15. G.M. Responses to Defendant Dirk Alfano's Interrogatories Set Two. (Dated 3/4/2016)

16. G.M. Responses to Defendant Dirk Alfano's Second Set of Request for Admission. (Dated 3/8/2016)

17. G.M. Responses to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 3/8/2016)

18. G.M. Amended Responses to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 3/21/2016)

/////

/////

**J.M.'s Responses to City's Discovery**

1. Plaintiff's Responses to Defendant COV First Set of Special Interrogatories. (Dated 1/14/2015)

2. Plaintiff's Responses to Defendant COV First Set of Requests for Admission. (Dated 1/14/2015)

3. Plaintiff's Responses to Defendant COV First Set of Request for Production of Documents. (Dated 1/14/2015)

4. Plaintiff's Supplemental Responses to Defendant COV First Set of Special Interrogatories. (Dated 8/6/2015)

5. Plaintiff's Supplemental Responses to Defendant COV First Set of Request for Production of Documents. (Dated 8/6/2016)

6. Plaintiff's Responses to Defendant COV Second Set of Request for Production of Documents. (Dated 11/2/2015)

7. Plaintiff's Responses to Defendant COV Second Set of Request for Production of Documents. (Dated 11/10/2015)

8. Plaintiff's Responses to Defendant COV Second Set of Requests for Admission. (Dated 12/17/2015)

9. Response to Requests for Admission Set One. (Dated 2/11/2016)

10. Response to Interrogatories Set One. (Dated 2/11/2016)

11. Response to Requests for Admission Set Three. (Dated 2/11/2016)

12. Further Amended Response to Requests for Admission Set Two. (Dated 2/25/2016)

13. Further Response to Interrogatories Set One. (Dated 2/26/2016)

14. Response to Requests for Admission Set Two. (Dated 3/4/2016)

15. Response to Interrogatories Set Two. (Dated 3/4/2016)

16. Plaintiff's Responses to Defendant Dirk Alfano's Second Set of Request for Admission. (Dated 3/8/2016)

17. Plaintiff's Responses to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 3/8/2016)

18. Plaintiff's Responses to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 3/23/2016)

19. Plaintiff's Amended Responses to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 4/19/2016)

**N.A.C.'s Responses to City's Discovery**

1.  Plaintiff's Responses to Defendant COV First Set of Special Interrogatories. (Dated 1/14/2015)

2.  Plaintiff's Responses to Defendant COV First Set of Requests for Admission. (Dated 1/14/2015)

3.  Plaintiff's Responses to COV First Set of Request for Production of Documents. (Dated 1/14/2015)

4.  Plaintiff's Supplemental Responses to Defendant COV First Set of Special Interrogatories. (Dated 8/6/2015)

5.  Plaintiff's Supplemental Responses to Defendant COV First Set of Request for Production of Documents. (Dated 8/6/2015)

6.  Plaintiff's Responses to Defendant COV Second Set of Request for Production of Documents. (Dated 11/2/2015)

7.  Plaintiff's Responses to Defendant COV Second Set of Special Interrogatories. (Dated 11/16/2015)

8.  Plaintiff's Responses to Defendant COV Second Set of Request for Production of Documents. (Dated 11/10/2015)

9.  Plaintiff's Supplemental Responses to Defendant COV Second Set of Request for Production of Documents. (Dated 12/10/2015)

10. Plaintiff's Responses to Defendant COV Second Set of Requests for Admission. (Dated 12/17/2015)

11. Response to Requests for Admission Set One. (Dated 2/11/2016)

12. Response to Interrogatories Set One. (Dated 2/11/2016)

13. Response to Requests for Admission Set Three. (Dated 2/11/2016)

14. Further Amended Response to Request for Admission Set Two. (Dated 2/25/2016)

15. Further Response to Interrogatories Set One. (Dated 2/26/2016)

16. Response to Interrogatories Set Two. (Dated 3/4/2016)

17. Response to Requests for Admission Set Two. (Dated 3/4/2016)

18. Plaintiff's Responses to Defendant Dirk Alfano's Second Set of Requests for Admission. (Dated 3/8/2016)

19. Plaintiff's Responses to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 3/8/2016)

**Jacqueline Madueña's Responses to COV'S Discovery**

1. Plaintiff's Responses to Defendant COV First Set of Special Interrogatories. (Dated 1/14/2015)

2. Plaintiff's Responses to Defendant COV First Set of Request for Admission. (Dated 1/14/2015)

3. Plaintiff's Responses to Defendant COV First Set of Request for Production of Documents. (Dated 1/14/2015)

4. Plaintiff's Supplemental Responses to Defendant COV First Set of Special Interrogatories. (Dated 8/6/2015)

5. Plaintiff's Supplemental Responses to Defendant COV First Set of Request for Production of Documents. (Dated8/6/2015)

6. Plaintiff's Responses to Defendant COV Second Set of Requests for Production of Documents. (Dated 11/2/2015)

7. Plaintiff's Responses to Defendant COV Second Set of Request for Production of Documents. (Dated 11/10/2016)

8. Plaintiff's Responses to Defendant COV Second Set of Special Interrogatories. (Dated 11/16/2015)

9. Plaintiff's Responses to Defendant COV Second Set of Requests for Admission. (Dated 12/17/2015)

10. Response to Request for Admission Set One. (Dated 2/11/2016).

11. Response to Interrogatories Set One. (Dated2/11/2016)

12. Response to Request for Admission Set Three. (Dated 2/11/2016)

13. Further Amended Response to Requests for Admission Set Two. (Dated 2/25/2016)

14. Further Response to Interrogatories Set One. (Dated 2/26/2016)

15. Response to Requests for Admission Set Two. (Dated 3/4/2016)

16. Response to Interrogatories Set Two. (Dated 3/4/2016)

17. Plaintiff's Amended Responses to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 3/23/2016)

**Reynalda Molina Discovery Responses**

1. Plaintiff's Response to Defendant COV First Set of Special Interrogatories. (Dated 12/29/2014)

2. Plaintiff's Response to Defendant COV First Set of Requests for Admission. (Dated12/29/2014)

3. Plaintiff's Response to Defendant COV First Set of Request for Production of Documents. (Dated 12/29/2016)

4. Plaintiff's Further Response to Defendant COV First Set of Requests for Admission. (Dated 1/6/2015)

5. Plaintiff's Response to Defendant COV First Set of Request for Production of Documents. (Dated 8/12/2015)

6. Plaintiff's Response to Defendant COV Second Set of Request for Production of Documents. (Dated 9/22/2015)

7. Plaintiff's Response to Defendant COV Second Set of Requests for Admission. (Dated 12/8/2015)

8. Plaintiff's Supplemental Response to Defendant COV Second Set of Request for Production of Documents. (Dated 12/18/2015)

9. Plaintiff's Response to Defendant COV Third Set of Requests for Admission. (Dated 12/23/2015)

/////

10. Plaintiff's Response to Defendant Dirk Alfano's First Set of Requests for Admissions. Dated 2/10/2016)

11. Plaintiff's Response to Defendant Dirk Alfano's First Set of Special Interrogatories. (Dated 2/10/2016)

12. Plaintiff's Supplemental Response to Defendant COV Third Set of Requests for Admission. (Dated 2/10/2016)

13. Plaintiff's Response to Defendant Dirk Alfano's Second Set of Requests for Admission. (Dated 2/22/2016)

14. Plaintiff's Response to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 2/22/2016)

15. Plaintiff's Response to Defendant COV Fourth Set of Requests for Admission. (Dated 2/29/2016)

16. Plaintiff's Supplemental Response to Defendant Dirk Alfano's Second Set of Requests for Admissions. (Dated 3/21/2016)

17. Plaintiff's Supplemental Response to Defendant Dirk Alfano's Second Set of Special Interrogatories. (Dated 3/21/2016)

IT IS SO ORDERED.

Dated:   **July 21, 2016**

UNITED STATES DISTRICT JUDGE