UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNALDA MOLINA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF VISALIA, et al.,<br><br>Defendants. | No. 1:13-cv-01991-DAD-SAB<br><br>ORDER ON MOTIONS IN LIMINE<br><br>(Doc. Nos. 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118) |

On June 20, 2014, plaintiffs Reynalda Molina and Jacqueline Mendez-Madueña with minors G.M. and N.A.C. proceeding through *guardian ad litem* Veronica Ayon filed the operative second amended complaint ("SAC") in this action against the City of Visalia, Officer Adam Collins, Officer Daniel Roberts, Officer Dirk Alfano, and Does four through one hundred. (Doc. No. 40.)  The action stems from a high speed chase and encounter with police during which shots were fired that resulted in the deaths of Ruben Molina and Edwardo Madueño.  The SAC alleges causes of action for:  (1) unreasonable search and seizure and use of excessive force under 42 U.S.C. § 1983; (2) substantive due process under 42 U.S.C. § 1983; (3) wrongful death under California Government Code §§ 815.2(a), 820(a) and California Civil Code § 43; (4) negligence survival action; (5) negligence under California Government Code § 815.2(a); and (6) assault and battery under California Government Code § 815.2(a).  (*Id.*)

/////

1

On July 25, 2016, plaintiffs filed nine motions in limine and defendants filed fourteen such motions. (Doc. Nos. 108–118.) On August 8, both parties filed oppositions. (Doc. Nos. 119–127.) On August 15, both parties filed replies. (Doc. Nos. 129–137.) The hearing on the twenty-three motions in limine was held on September 6, 2016. At that hearing, attorneys Charles Charlton, John Denove, and Peter Bersin appeared in person on behalf of the plaintiffs. (Doc. No. 141.) Attorney Leonard Herr appeared in person and Ronald Statler appeared telephonically on behalf of defendants. (*Id.*)

The court ruled on several motions in limine from the bench at the hearing. Plaintiffs' first motion in limine was denied without prejudice as to cumulative overlap between the testimony of plaintiffs police practices experts George Williams and Joseph Callanan and without prejudice as to the rebuttal testimony of George Williams. Plaintiffs' second motion in limine was granted to the extent that Joseph Callanan will not be allowed to testify to legal conclusions. For plaintiffs' fourth motion in limine, the court determined that a pretrial *Daubert* hearing was necessary. Plaintiffs' eighth motion in limine was granted with respect to the presence of drugs in an unspecific amount in autopsy reports. Plaintiffs' ninth motion in limine was denied based upon defense counsel's representations that he will only be asking experts if they relied upon the under consideration report and he will not be asking about the conclusions set forth in that report.

Defendants' first motion in limine was granted as to evidence that Nicholas Chavez sued the city or settled his claims, but was denied as to evidence that Chavez was shot. Defendants' second motion in limine was denied. Defendants' third motion in limine was granted as to characterizing the car chase as "wrongful" or "unlawful," but ruling was deferred as to evidence about the car chase. Defendants' fifth motion in limine was denied. Defendants' ninth motion in limine was granted as to the unopposed aspects and to the extent that Roger Clark will not be allowed to testify to legal conclusions, but ruling on the motion in limine was deferred as it relates to the Peace Officer Standards and Training ("POST"). Defendants' eleventh motion in limine was denied. Defendants' sixth, seventh, eighth, thirteenth, and fourteenth motions in limine were all unopposed and granted. Counsel for all parties represented that they would attempt to reach a resolution on defendants' tenth and twelfth motions in limine prior to trial.

The remainder of the motions in limine were taken under submission and the court now rules on plaintiffs' third, fifth, sixth, and seventh motions in limine and defendants' third, fourth, and ninth motions in limine. A settlement conference is set for September 30, 2016 at 10:00 AM in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean. (Doc. No. 138.) Jury trial is scheduled to commence on November 1, 2016, at 1:00 PM. (Doc. No. 101.) For the reasons described on the record and in this order, the court issues the following order on the parties' remaining motions in limine.

**A. Plaintiffs' third motion in limine**

Plaintiffs move to exclude two portions of the testimony of defendants' police psychology expert Kris Mohandie, Ph.D. "because the trial is about how the jury interprets the evidence and determines if the use of deadly force was justified and not about what the expert believes as to whether the use of deadly force was justified." (Doc. No. 110 at 5.) Specifically, plaintiffs seek to exclude the following two opinions:

> It is expected, normal, and reasonable that the responding officers, under the totality of the circumstances and the highly stressful nature of this particular event, perceived danger and an immediate threat from the suspects. Indeed the totality of the circumstances the officers were subjected to, were more than sufficient to induce a profound psychophysiological fear response. The normal and expected reaction would be for the officers to respond as they did, with behaviors designed to reduce the perceived threat.
>
> * * *
>
> The officers reported the immediate, strong, and continued belief and perception that they heard gunfire from the vicinity of the suspects. Even one of the surviving suspects in the vehicle perceived gunshots from coming within the vehicle. It is noted that Tulare County Sheriff's Office has not located any shell cases from any of the decedents' handguns. Whether the officers fired first or not, as noted, the circumstances were such that it was normal, expected, and reasonable for them to have perceived immediate danger. Whether the officers heard the suspect(s) firing their weapons, or their own rounds, the other officers' rounds, or any other loud noise (subject kicking the window, or other noises stemming from the aftermath of the vehicle accident such as backfires), it is normal, expected, and reasonable that the officers concluded this was gunfire, under the totality of the circumstances.

(Doc. No. 110-2 at 18, 19-20.)

3

Defendants oppose the motion on the grounds that experts can opine on the ultimate issues upon which the jury will be called to pass on and the reasonableness of a person's actions is such an issue. (Doc. No. 122.) Defendants note that, indeed, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

However, whether the officers "perceived" a danger and a threat from the suspects is not an opinion that requires expert testimony. *See Willis v. City of Fresno*, No. 1:09-cv-01766-BAM, 2013 WL 6145232, at *1 (E.D. Cal. Nov. 21, 2013) (precluding Dr. Mohandie from testifying that officers "perceived" a threat in an excessive force case). The proffered expert testimony is therefore not the type of expert opinion that "will help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Accordingly, the court precludes Dr. Mohandie from offering such an opinion.

The court also concludes that Dr. Mohandie may also not opine or speculate to the specific psychophysiological reactions of the officers involved in this case. *See Willis*, 2013 WL 6145232, at *1 (precluding Dr. Mohandie from testifying or speculating on the specific psychophysiological reactions of the officers involved in a police shooting). Certainly, however, Dr. Mohandie appears to be a well-qualified licensed clinical psychologist with experience treating patients involved in police shootings and other traumatic events. (*See* Doc. No. 110-2 at 16-17). She may, therefore, provide testimony offering general opinions on the psychophysiological reactions involved in officer shootings.

**B. Plaintiffs' fifth motion in limine**

Plaintiffs move to exclude evidence of decedents Edwardo Maduena and Ruben Molina's criminal history as irrelevant, unduly prejudicial, and impermissible character evidence, arguing that there is nothing to suggest that the officers knew of the criminal histories of the decedents at the time of the shooting. (Doc. No. 114 at 2.) Defendants oppose the motion on the ground that the "other acts" evidence is not being used to prove character, but to prove other matters material to the action. (Doc. No. 124, at 2.) Specifically, defendants argue decedents' criminal histories and gang affiliations show consciousness of guilt in connection with the high speed chase that ultimately led to the death of the decedents.

The general rule is that character evidence is not admissible when offered to prove that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404(a)(1). Evidence of other crimes, wrongs or acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." 404(b)(2). Evidence is offered for a proper purpose under Rule 404(b) if it is probative of a material issue other than character. *Huddleston v. United States*, 485 U.S. 681, 685 (1988). The test for admitting evidence under Rule 404(b) is whether: (1) it tends to prove a material fact; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the person committed the act; and (4) probative value of the evidence must not be substantially outweigh by unfair prejudice. *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288–89 (9th Cir. 1996). Evidence is "material" to an issue if it shows some fact specifically relevant to the case at hand. *United States v. Howell*, 231 F.3d 615, 628 (9th Cir. 2000).

Here, defendants have not persuasively articulated how the alleged prior acts of Edwardo Maduena and Ruben Molina's are relevant to the issue of whether the officers' use of deadly force against the decedents was excessive where, as here, it is undisputed that the decedents' criminal history was not known to the officers at the time of the shooting. Whether the officers' actions under the circumstances were objectively reasonable is the issue in the case and resolution of that issue does not turn on any prior acts of Edwardo Maduena and Ruben Molina. *See Davis v. Mason County*, 927 F.2d 1473, 1484 (9th Cir. 1991) (in § 1983 excessive force case, evidence offered by defendant, in order to show plaintiff's proclivity for violence, that plaintiff was involved in drunken altercation five days before the incident in question, was inadmissible under Rule 404(b)).

Moreover, under Rule 403, the court must balance the probative value of decedents' criminal histories against its prejudicial effect. Any slight probative value such evidence could conceivably have here is substantially outweighed by the potential that the jury would consider such evidence beyond the purpose for which it would be admitted—even with a limiting

1 instruction.

2 Accordingly, plaintiffs' motion in limine in this regard will be granted as to the liability
3 stage of the trial.

### C. Plaintiffs' sixth motion in limine

Plaintiffs nest move to exclude any evidence of alleged gang affiliation on the part of decedents and any witnesses as irrelevant and because any probative value is substantially outweighed by its prejudicial value. (Doc. No. 115.) Just as is the case with respect to plaintiffs' fifth motion in limine, defendants oppose the motion on the ground that this "other acts" evidence is not being used to prove character, but to prove other matters material to the action. (Doc. No. 124 at 2.) Defendants' argue that:

> [Plaintiffs'] protests that [decedents] were just out for an innocent drive home can be impeached with evidence of potential gang affiliations, their prior bad act of arming themselves before, or as they climbed into the Hyundai, and their prior criminal activities [particularly gun-related crimes] during their high speed flight from a simple traffic stop. These go to motive, intent, knowledge, identity, absence of mistake, and lack of accident.

(*Id*. at 2-3.) Furthermore, defendants' argue, "consciousness of the conduct is recognized as relevant to Veh. Code § 2800.2." (*Id*. at 2.)

As was the case with respect to plaintiffs' fifth motion in limine, the subjective state-of-mind and any motivation for fleeing on the part of Maduena, Molina, and the other passengers of the vehicle are not at issue in this action and are not relevant to a determination of the defendants' liability because officers Collins, Roberts, and Alfano were unaware of them. *See Estate of Diaz v. City of Anaheim*, ___F.3d___, No. 14-55644, 2016 WL 4446114, at *4 (9th Cir. Aug. 24, 2016) (evidence of suspect's gang membership was not relevant to liability issues in a § 1983 action for excessive use of force arising from an officer's fatal shooting of a suspect, where the officer was unaware of the suspect's gang membership and had not seen the suspect's tattoos when the officer shot the suspect). Moreover, the Ninth Circuit "has recognized time and time again that gang evidence has the potential to be particularly prejudicial." *Id*. at 7 (citing *Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004) ("Our cases make it clear that evidence relating to gang involvement will almost always be prejudicial[.]"); *United States v. Takahashi*, 205 F.3d 1161,

1165 (9th Cir. 2000) (holding the district court did not abuse its discretion in admitting evidence of gang membership where the court "recognized the need to prevent undue prejudice," gave limiting instruction, excluded photographs of gang tattoos as evidence of membership, and minimized repetition of the gang's name)).

Accordingly, plaintiffs' motion in limine in this regard is also granted as to the liability stage of the trial.

**D. Plaintiffs' seventh motion in limine**

Plaintiffs also move to exclude evidence of (1) tattoos, (2) name monikers, (3) weapons, and (4) ammunition found by the police after the shooting scene was under the control of the officers as irrelevant, prejudicial, and confusing hindsight evidence of circumstances beyond the officers' actual or constructive knowledge at the time of the shooting. (Doc. No. 116, at 4–5.) For the same reasons set forth above as to plaintiffs' fifth and sixth motion in limine, evidence of tattoos and name monikers will be excluded from evidence at the liability stage of the trial. However, plaintiffs' motion in limine will be denied as to the weapons and ammunition found at the scene. As defendants have persuasively argued, such evidence goes directly to defendants' claim of possible gunfire being directed at them from inside the decedents' vehicle (Doc. No. 125 at 2–3), and it is accordingly clearly relevant to the issue which must be resolved by the jury at trial.

**E. Defendants' third motion in limine**

The court granted defendants' third motion in limine from the bench at the hearing on the motions in limine with respect to precluding the characterization of the chase as wrongful or unlawful. However, defendants also move for an order excluding evidence regarding the car chase in general. (Doc. No. 112 at 5.)

In their opposition to defendants' motion for partial summary judgment in this case, plaintiffs explicitly stated that "Plaintiffs 42 U.S.C. § 1983 claims are based on the contention that the officers used deadly and excessive force against Ruben Molina and Edwardo Madueña and not because of the manner in which the vehicle pursuit was conducted." (Doc. No. 93, at 2.) Plaintiffs reiterated this position during oral argument and, accordingly, summary judgment on

7

plaintiffs' § 1983 claims relating to the high speed chase were denied as having been rendered moot. (Doc. No. 102 at 7–8.)

Evidence of the chase is, however, relevant to plaintiffs' claims based upon the police shooting that occurred when the chase ended. "[A]n officer's preshooting conduct is properly 'included in the totality of circumstances surrounding [his] use of deadly force, and therefore the officer's duty to act reasonably when using deadly force extends to preshooting conduct.'" *Hayes v. County of San Diego*, 736 F.3d 1223, 1236 (9th Cir. 2013) (quoting *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013)). Moreover, with respect to evaluating a Fourth Amendment claim of excessive use of force, "[t]he strength of the government's interest in the force used is evaluated by examining three primary factors: (1) 'whether the suspect poses an immediate threat to the safety of the officers or others,' (2) 'the severity of the crime at issue,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Here, the car chase is relevant because it is evidence that decedents were "actively resisting arrest or attempting to evade arrest by flight." *Glenn*, 673 F.3d at 872.

Therefore, defendants' motion in limine is denied to the extent it seeks exclusion of evidence about the car chase.

**F. Defendants' fourth motion in limine**

Defendants move to exclude evidence that the defendant police officers' conduct is to be measured by Police Officer Standards and Training ("POST") standards on the grounds that it would present a substantial risk of juror confusion and the standard for excessive force here is set by federal constitutional law and not the POST standards. (Doc. No. 112 at 7–8.) The Ninth Circuit, however, has stated that a rational jury can rely on evidence of whether an officer's conduct comported with law enforcement standards, including the POST standards, in assessing whether an officers' use of force was unreasonable. *See Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) ("Discussing whether the officers' conduct comported with law enforcement standards, the expert relied upon California's Peace Officer Standards and Training, which are applicable to all state police officers and are a part of Department policy. He concluded that the

8

officers could and should have used control holds to complete the arrest rather than to sic Quando on him once they had him restrained on the ground. . . .  A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable.") *(*citing *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (as amended) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484–85 (9th Cir. 1991) (as amended) (testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received)).

Accordingly, defendants' motion in limine in this regard is denied.

### G.  Defendants' ninth motion in limine

The remaining portion of defendants' ninth motion in limine relates to whether expert Roger Clark should be allowed to testify that the conduct of Officers Alfano, Roberts and Collins, after they got out of their patrol vehicles, was not consistent with POST training and was part of the totality of circumstances that led to the officers' use of deadly force in this case. (Doc. No. 119 at 11.)  As noted above, the Ninth Circuit has stated that a rational jury can rely on evidence of whether an officer's conduct comported with law enforcement standards, including the POST standards, in assessing whether an officers' use of force was unreasonable.  *See Smith*, 394 F.3d at 703.  Accordingly, plaintiffs' expert will be allowed to express an opinion on whether the officers' conduct, after they got out of their vehicle, was consistent with POST and constituted part of the totality of circumstances that led to their use of deadly force.[1]

### H.  Bifurcation of Compensatory Damages

In ruling on the various motions in limine in this order and from the bench, the court has excluded gang evidence, evidence of drug use, and evidence of criminal histories from the liability stage of the proceedings.  This evidence, however, may have some relevance as to compensatory damages, which would require bifurcation of the trial and separate proceedings for compensatory damages.  *See Estate of Diaz*, 2016 WL 4446114, at *7 (gang evidence and

---

[1] The court notes, however, that Mr. Clark's opinion as proffered in his expert report includes an impermissible legal conclusion ("use of lethal force was unlawful under the circumstances (as taught by POST)"), which the court has previously ruled from the bench will be excluded.

9

evidence of drug use, which may have had some relevance to damages, required bifurcation of the liability stage of the trial in an excessive force case stemming from a fatal police shooting, as this evidence had no relevance to liability and was highly prejudicial.)  However, the undersigned would observe based upon what is presently before the court that "it is hard to see how most of this [evidence is] relevant even to damages, absent testimony . . . that [plaintiffs'] knew of the [criminal histories, gang evidence,] and drug use on the day of the offense, and that that knowledge undermined the emotional impact of [decedents'] death[s]." *Id*.  The court therefore defers on ruling on whether this evidence is relevant to compensatory damages, and accordingly, whether bifurcation of the trial is necessary.

## Conclusion

For all of the reasons set forth above and described on the record,

1) Plaintiffs' third motion in limine (Doc. No. 110) is granted as to whether the officers "perceived" a danger and a threat from the suspects, granted as to whether Dr. Mohandie may offer an opinion or speculate as to the specific psychophysiological reactions of the officers involved in this case, but denied as to Dr. Mohandie offering general opinions on the psychophysiological reactions involved in officer shootings;

2) Plaintiffs' fifth motion in limine (Doc. No. 114) is granted;

3) Plaintiffs' sixth motion in limine (Doc. No. 115) is granted;

4) Plaintiffs' seventh motion in limine (Doc. No. 116) is granted as to tattoos and name monikers, but denied as to weapons and ammunition found by the police at the scene;

5) Defendants' third motion in limine (Doc. No. 112) is denied as to evidence about the car chase;

6) Defendants' fourth motion in limine (Doc. No. 112) is denied; and

7) Defendants' ninth motion in limine (Doc. No. 112) is denied as it relates to testimony regarding the POST standards;

8) The court ruled from the bench on plaintiffs' first, second, eighth, ninth motions in limine (Doc. Nos. 108, 109, 117, 118) and on defendants' first, second, portions of third, fifth, sixth, seventh, eighth, and portions of ninth motions in limine (Doc. Nos.

112);

9) A *Daubert* hearing with respect to plaintiffs' fourth motion in limine (Doc. No. 111) will be conducted prior to trial if necessary;

10) Only defendants' tenth and twelfth motions in limine (Doc. No. 112) remain unresolved due to the parties position expressed at the hearing that they wished to meet and confer to determine if they could be resolved prior to trial without further court intervention.

IT IS SO ORDERED.

Dated:   **September 16, 2016**

UNITED STATES DISTRICT JUDGE